UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 08-20518-CIV-GOLD/McALILEY

PATRICIA MELLO AZEVEDO,

        Plaintiff,

v.

CARNIVAL CORP.,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION; GRANTING PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEY'S FEES AND COSTS; CLOSING CASE

THIS CAUSE is before the Court on: (1) Defendant's Motion to Compel Arbitration [DE 3]; and, (2) Plaintiff's Motion to Remand and Request for Attorney's Fees and Costs [DE 7]. Subject matter jurisdiction in this case is dependent on the enforceability and applicability of the Arbitration Clause of the 2006 Seafarer Employment Agreement ("SEA") under which Plaintiff worked for Carnival as a casino dealer aboard the cruise ship "Elation." Plaintiff also worked as a slot machine host in 2004 aboard the cruise ship "Celebration" pursuant to a different SEA which did not contain an arbitration agreement. If the clause in the 2006 SEA is valid and applicable to the dispute at issue, then the Court has subject matter jurisdiction pursuant to the United States Conventions on Recognition and Enforcement of Foreign Arbitral Awards (New York, June 10, 1958) ("Convention Act") and its enabling legislation, 9 U.S.C. § 201, *et seq.* On the other hand, if the Arbitration Clause is null and void, or if it is not retroactively applicable to the alleged events that occurred in 2004 while Plaintiff was a seafarer aboard the Celebration, then the Court does not have subject matter jurisdiction and the case must be remanded. Because these

1

motions are inextricably intertwined, I will address both motions as one. Having review the

Motions and related pleadings, the record and applicable law, I conclude that oral

argument is not necessary, and that the arbitration clause from the 2006 SEA does not

apply retroactively to disputes arising from events that took place in 2004, when Plaintiff

was working aboard a different vessel under a different agreement. I further find that there

is no written agreement to arbitrate the claims alleged in this matter. For this reason, I

deny Defendant's motion to compel arbitration and remand the matter to state court.

I.      Background

        This action arises out of an alleged medical mis-diagnosis and inadequate care and

treatment that Plaintiff received in 2004 while employed by Defendant Carnival Corporation

("Carnival" or "Defendant") as a slot machine host aboard the Celebration. According to

Plaintiff, the incidents resulted in the need to undergo a partial colon resection and an

emergency open appendectomy that left Plaintiff with permanent, extensive and disfiguring

scars.

        A.      The Complaint

        The facts alleged in the Complaint are as follows:

        In 2004, Azevedo was working aboard the cruise ship Celebration pursuant to a

SEA which did not contain an arbitration clause. On or about November 19, 2004, Plaintiff

reported to the shipboard medical center with abdominal pains. (Compl., ¶ 9). The

shipboard medical staff recommended that Plaintiff drink milk and eat bread, and

prescribed her aspirin. (Id.). Plaintiff followed the shipboard medical staff's instructions,

but soon after began vomiting the bread and milk. (Id. at ¶ 10). Plaintiff returned to the

shipboard medical center to report the vomiting. (Id.). Upon her return to the shipboard

medical center, a staff member telephoned the shipboard physician who telephonically instructed the medical staff member to provide Plaintiff with Mylanta and pain medication. (*Id.* at ¶ 11). The physician also instructed the staff member to advise Plaintiff not to work for the rest of the evening. (*Id.*).

On or about November 20, 2004, Plaintiff reported back to the shipboard medical center and continued to complain of abdominal pain. (*Id.* at ¶ 12). A shipboard physician examined Plaintiff, diagnosed her with menstrual pains, and prescribed pain medication. (*Id.*). On or about November 23, 2004, Plaintiff reported back to the shipboard medical center still complaining of abdominal pain and asked the shipboard physician for permission to be seen in a shoreside hospital. (*Id.* at ¶ 13). Plaintiff's request was denied. (*Id.*).

Over the next few days, Plaintiff continued to report back to the shipboard medical center, but the shipboard physicians and medical staff kept giving Plaintiff pain medication even as Plaintiff's pain intensified to the point that her mobility was restricted. (*Id.* at ¶ 14). On or about November 28, 2004, Plaintiff once again reported to the shipboard medical center and complained of abdominal pain and nausea coupled with bleeding from her nose. (*Id.* at ¶ 15). According to Plaintiff, the pain was so intense that she could no longer walk. (*Id.*). At this point, the shipboard physician ordered blood labs to be performed, but the physician did not do an abdominal x-ray. (*Id.*).

On November 29, 2004, Plaintiff was seen in the Emergency Room ("ER") at

3

Shands Jacksonville.[1]  (*Id.* at ¶ 16).  Upon arrival to the ER, hospital staff immediately recognized the seriousness of Plaintiff's conditions, and admitted her for an appendectomy.  (*Id.* at ¶ 17).  Plaintiff alleges that, during the procedure, the surgeon was forced to perform and open appendectomy rather than complete the less obtrusive laparoscopic appendectomy he initially attempted due to the extent of inflamation of the appendix.  (*Id.* at ¶ 18).  Additionally, because the appendix was so inflamed and was adherent to the terminal ileum and adherent to the cecum, the Plaintiff had to undergo a partial colon resection. (*Id.* at ¶ 19).

Based on these allegations, on July 3, 2007, Plaintiff brought this action against Carnival in Miami-Dade County Circuit Court.  (*See* Complaint, DE 1).  The complaint requests a jury trial and asserts three counts against Carnival for: (1) Jones Act Negligence (Count I); (2) Unseaworthiness (Count II); and, (3) Failure to Provide Prompt and Adequate Maintenance and Cure (Count III).  All three counts stem from the events that took place in 2004 aboard the Celebration.

On February 27, 2008, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441, *et seq.,* and 9 U.S.C. § 205. Section 205 of the Convention Act  allows for removal at any time before trial where an action pending in state court relates to an arbitration agreement or award falling under the Convention. *See* 9 U.S.C. § 205.  Plaintiff has moved the Court for an order remanding the action to the Miami-Dade County Circuit Court pursuant to 28 U.S.C. §§ 1146 and 1447.  In addition, Plaintiff requests that Carnival

---

[1]

Due to a scrivener's error, the Complaint reads "November 29, 2007" rather than "2004." However, Plaintiff has identified the error, and the "2004" date is shown from the context and all other paragraphs in the pleading.

4

pay her costs and expenses, including reasonable attorney's fees, incurred as a result of the improper removal.

### B.    The 2006 Seafarer Employment Agreement

Azevedo returned to work for Carnival in February 2005, after being treated in Jacksonville following the surgical procedures she underwent at Shands Jacksonville hospital.    On November 20, 2006, Azevedo signed a new Seafarer Employment Agreement which contained an arbitration clause. (*See* SEA, Notice of Removal at Ex. A). Pursuant to the 2006 SEA, Azevedo worked as a casino dealer aboard the cruise ship Elation.   Clause 2 of the 2006 SEA provides that:

> This Seafarer's Agreement shall *be effective upon the Seafarer's reporting to work on an assigned vessel in navigation.*  The parties agree that the employment relations between them shall be governed by the terms of this Agreement *commencing on the date the Seafarer first signs onboard the assigned vessel after signing this Agreement* and continuing for a period of time which shall not exceed a maximum service period of 6 months.

(2006 SEA at Cl. 2) (emphasis added).   The 2006 SEA, unlike the 2004 Agreement, contained the following arbitration clause:

> **Arbitration.   Any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration under the Arbitration Rules of the International Chamber of Commerce, which Rules are deemed to be incorporated by reference into this clause.** ... Each party shall bear its own attorney's fees, and each shall pay one half of the costs of arbitration.

(2006 SEA, Cl. 9) (emphasis in original). The SEA also provides that the agreement "constitutes the sole and entire employment agreement of the parties." (*Id.*, Cl. 7).

5

II.    Analysis

A.    Motion to Remand and Motion to Compel Arbitration

Federal law strongly favors agreements to arbitrate, particularly in international commercial transactions. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506 (1974). In deciding a motion to compel arbitration under the Convention Act, a court conducts a very limited inquiry. *Bautista v. Star Cruises,* 396 F.3d 1289, 1294 (11th Cir. 2005). The removing party has the initial burden of proving the four jurisdictional requirements: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. *Id.* at 1295, n. 4. If the four jurisdictional requirements are satisfied, the court must compel arbitration unless the plaintiff shows that one of the Convention's affirmative defenses applies. *Id.* at 1294-95. That is, arbitration is mandatory unless the plaintiff proves that the agreement is "null and void, inoperative or incapable of being enforced." *Vacaru v. Royal Caribbean Cruises, Ltd.,* Case No. 07-23040, 2008 U.S. Dist. LEXIS 23012, * 10, n.3 (S.D. Fla. Feb. 1, 2008) (Ungaro, J.) (quoting the Convention Act, art. II (3), available at http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention.html). The null and void clause of the Convention Act is limited in scope, and "encompass[es] only those situations-such as fraud, mistake, duress, and waiver-that can be applied neutrally on an international scale." *See Bautista,* 396 F.3d at 1302 (quoting *DiMercurio v. Sphere Drake*

6

*Ins. PLC*, 202 F.3d 71, 80 (1st Cir.2000)).

In its Motion to Compel Arbitration, Defendant argues that the Court must refer this matter to arbitration in accordance with the written agreement between the parties and pursuant to the holding in *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005) (holding that once the four jurisdictional requirements have been establishing by the removing party, a court must arbitration unless the plaintiff shows that one of the Convention's affirmative defenses applies – i.e. the agreement is null and void, inoperative or incapable of being enforced.).

In its Motion to Remand, Plaintiff argues that this case must be remanded to state court because: (1) the Notice of Removal was untimely because it was not filed within 30 days of service of the initial pleading as required by § 1446(b); (2) the arbitration of the 2006 SEA does not apply retroactively to the 2004 incident; and, (3) Carnival waived its right to arbitration through litigation conduct. Plaintiff also incorporates the following arguments from its response in opposition to Defendant's motion to compel arbitration as additional grounds for remanding the case: (1) 28 U.S.C. § 1445(a) prohibits removal of Jones Act claims; (2) state court actions brought by seaman are not removable to federal court; (3) arbitration clauses cannot be applies to Jones Act cases; and, (4) Section 1 of the Federal Arbitration Act excludes seamen's contracts from the reach of the Convention Act and arbitration. As to these last arguments, Plaintiff concedes that courts in this district and/or the Eleventh Circuit have resolved these issues against her, but includes them in order to preserve the record for subsequent appellate review. (Motion to Remand, DE 7

7

at p. 18, n. 13; Opposition to Motion to Compel, DE 16 at pp. 4-5, n. 3).[2]

## 1. Timeliness of Notice of Removal

Plaintiff argues that the case must be remanded because the Notice of Removal was untimely as it was not filed within 30 days of service of the initial pleading. Courts in this district have repeatedly rejected this argument in cases that are removed under the Convention Act. *See, e.g., Acosta v. Norwegian Cruise Line, Ltd.,* 303 F. Supp. 2d 1327, 1329, n. 2 (S.D. Fla. 2003) ("Plaintiff also argues that Defendant's removal of this case was untimely, but 9 U.S.C. § 205 permits a Defendant to remove a case pursuant to the Convention at any time before trial."); *Sheinberg v. Princess Cruise Lines,* Ltd., 269 F. Supp. 2d 1349, 1352 (S.D. Fla. 2003) ("[G]iven the plain language of 9 U.S.C. § 205 regarding removal at any time before trial, the thirty day time limit does not apply to removal under the Convention."). I agree with these decisions and conclude that since § 205 of the Convention Act allows for removal of the case *at any time before trial,* and

---

2

For example, Plaintiff argues that the compulsory Arbitration Clause in the 2006 SEA cannot be enforced because a seaman's employment contract does not form a "commercial legal relationship." As to this argument, "Azevedo acknowledges that the Eleventh Circuit and this Court have ruled against Azevedo's position on this issue," *see, e.g., Bautista v. Star Cruises,* 396 F.3d 1289, 1294-1295 (11th Cir. 2005); *Lobo v. Celebrity Cruises,* 426 F. Supp. 2d 1296 (S.D. Fla. 2006), *aff'd,* 448 F. 3d 891 (11th Cir. 2007). Azevedo contends that the *Bautista* Court "got it wrong." I note that subsequent to its decision in *Bautista,* the Eleventh Circuit has had the opportunity to revisit its holding but has declined to overrule it. *See, e.g., Latoja v. Carnival Corp.,* 144 Fed. Appx. 101 (11th Cir. 2005) ("As the appellant... candidly concedes, his position in this appeal is squarely foreclosed by our decision earlier this year in *Bautista* .... There is no material distinction between the two cases. Latoja seeks only to preserve his ability to seek certiorari review in the United States Supreme Court, and he has done that."). Since Plaintiff has included these arguments only to preserve the record on appeal, and noting that Plaintiff concedes that precedent from courts in this district and the Eleventh Circuit precludes her arguments, I need not address them in this order.

because this case was removed prior to trial, the notice of removal was timely. *See* 9 U.S.C. § 205.

2.    Whether the 2006 Written Arbitration Agreement Applies

Plaintiff argues that the case must be remanded because the claims are not subject to the 2006 SEA. In essence, this argument can be construed as a claim that Defendant has failed to establish the first jurisdictional requirement from *Bautista*. *See Bautista*, 396 F.3d at 1295, n. 4.[3]  The first jurisdictional element that a removing party has the burden of proving is the existence of an agreement in writing within the meaning of the Convention to arbitrate the dispute at issue. *Id.* The parties agree that Azevedo's employment aboard the Celebration in 2004 was pursuant to a SEA that did not contain an agreement to arbitrate. Plaintiff thus argues that there is no written agreement because the arbitration clause is in an agreement signed on November 20, 2006 that covers claims arising out of Plaintiff's employment on the Elation, but the causes of action alleged in the complaint arise out of events that took place in 2004 while Plaintiff was a seafarer in the Celebration pursuant to a different SEA. Defendant nonetheless argues that the arbitration clause included in the 2006 SEA satisfies the "written agreement" requirement because the true nature of the allegations in the complaint encompass conduct that occurred after the 2006 SEA was executed and, alternatively, because the broad language of the arbitration clause covers dispute that arose prior to its execution. I disagree.

---

[3]

Although the parties have not characterized it as such, Plaintiff's argument that the only written agreement that exists between parties does not apply because it was not in existence during the relevant time period is essentially the same as the argument that no written agreement to arbitrate exists between the parties.

9

### a.    The Complaint does not allege ongoing misconduct

Defendant first argues that the claims in the complaint include conduct that occurred after the 2006 SEA was executed.  To support this contention, Defendant points out that Plaintiff has testified that "since 2004 and through the present date she ha[s] been experiencing diarrhea and abdominal pain, and, though she ha[s] been able to work continuously for almost three years, she 'cannot take this anymore.'" (Response to Motion to Remand, DE 20 at p. 3).  Further, Plaintiff has admitted that she did not disclose her continuous post-surgical pain and diarrhea to any doctor aboard any vessel until early 2007, at which time she was under the current contract aboard the Elation. (*Id.* at pp. 3-4). Carnival thus argues that although Plaintiff omitted in the Complaint any reference of ongoing medical mistreatment, Plaintiff's testimony confirms that her claim actually consists of an alleged failure to provide adequate medical care through the date she last worked for Carnival in 2007.  Carnival concludes that because this constitutes a claim for ongoing misconduct, the claims are subject to the 2006 arbitration provision.

It is well settled that a plaintiff, as the "master of her complaint, .. may include or omit [claims or] parties to prevent or allow removal as she wishes..." *Baker v. Tri-Nations Express, Inc.,* 531 F. Supp. 2d 1307, 1315 (M.D. Ala. 2008); *Estate of Ayres v. Beaver*, 48 F. Supp. 2d 1335, 1339 (M.D. Fla. 1999) ( "A plaintiff is, necessarily,  the 'master of his complaint' and may choose either federal or state jurisdiction.").  In her Complaint, – the allegations of which control this case – Azevedo does not allege any misconduct after November 28, 2004. According to the Complaint, the mis-diagnosis, inadequate treatment and care began on or about November 19, 2004 when she first reported to the medical center aboard the Celebration, (Compl., ¶ 9), and terminated on November 28, 2004

10

during her last time visit to the Celebration medical center when the shipboard physician did not take an abdominal x-ray, (*Id.* at ¶ 15).

Defendant conclusory alleges that "in her claim for ongoing failure to provide medical care through 2007, Plaintiff has alleged that the doctor on the Elation did not give her proper treatment..." (Response to Motion to Remand, DE 20 at p. 7). However, a review of the Complaint conclusively demonstrates that Azevedo does not allege that the doctor in the Elation failed to provide proper treatment. Azevedo does not even mention any visits to the Elation's medical center, nor does she allege that any physician or medical staff member at the Elation provided inadequate care. In fact, by the time Azevedo signed the 2006 SEA and began working on the Elation, she had already undergone surgery and post-op treatment in Jacksonville. The mere fact that Azevedo later visited a different shipboard medical center and complained to a different shipboard physician of continuing and lasting effects allegedly related to the 2004 mis-diagnosis, does not somehow translate to an implied allegation that Azevedo also received inadequate care at this later point in time; if she did, she has not alleged it, has not brought an action for it, and may not recover for it. As the "master of her complaint," Azevedo has purposefully chosen to forgo any available claims that arose after the 2006 SEA became effective. Whether she did so to avoid arbitration is irrelevant.

Carnival discusses several cases in which courts found that claims encompassing ongoing misconduct through and including the time when an arbitration agreement is signed are subject to arbitration, even if the initial injury occurred prior to the execution of the agreement. *See, e.g., Thomas v. Carnival Corp.,* Case No. 07-21867-LENARD, Order Granting Defendant's Motion to Compel, DE 49 (S.D. Fla. Jan. 4, 2008). However, these

11

cases are factually distinguishable. In *Thomas,* the Honorable Joan A. Lenard held that an arbitration clause that went into effect on October 10, 2005 applied to the claims raised by the seaman even though the underlying injury occurred during a prior period of employment which did not include an arbitration agreement. *See Thomas v. Carnival Corp.*, Case No. 07-21867-LENARD, DE 49 (S.D. Fla. Jan. 4, 2008) (appeal pending). Judge Lenard's decision to apply the arbitration clause retroactively was based on two facts not present in the instant case. First, Judge Lenard concluded that, based on the broad language of the arbitration provision, the parties intended to arbitrate all claims arising from Plaintiff's employment on the Imagination vessel, and that the claims at issue arose out of his employment on the Imagination. In contrast, the claims in this case are based on alleged misconduct during Plaintiff's employment as a slot machine host on the Celebration, yet the arbitration clause covers the period of employment as a casino dealer on the Elation. Second, in *Thomas*, Judge Lenard noted that the allegations in the complaint were not limited to the period prior to October 2005 and, in fact, the claims were based in large part upon allegations of ongoing misconduct through June 2006 – 3 months after the agreement containing the arbitration clause had been executed.[4]  Here, as explained above, Azevedo does not allege any misconduct after November 28, 2004, and Defendant cannot unilaterally amend the allegations of the complaint by pointing to answers to discovery requests. All three counts in Azevedo's Complaint stem from the alleged medical diagnosis and inadequate care and treatment that Azevedo received from

---

[4]

Specifically, the defendant in *Thomas* alleged that from May 1, 2006 to June 30, 2006, the plaintiff e-mailed the defendant about allegedly insufficient and/or late maintenance and cure payments.

12

Carnival in November 2004 while aboard the Celebration. Unlike *Thomas,* there are no allegations in the Complaint that Azevedo received inadequate care while aboard the Elation and subject to the terms of the 2006 SEA. There are also no allegations that Carnival's alleged misconduct was ongoing, or that it occurred on both vessels. The fact that Azevedo returned to work at Carnival and later visited the shipboard medical center of a different vessel is immaterial because Azevedo does not claim that she received inadequate medical care after 2004.

Defendant also relies on *Marcus v. Masucci,* 118 F. Supp. 2d 453 (S.D. N.Y. 2000), a case from the Southern District of New York, to support its position. In *Marcus*, the court held that an agreement to arbitrate could be retroactively applied because the plaintiff's "characterization of when the events underlying this dispute occurred [was] inconsistent *with the complaint." Id.* at 457 (emphasis added). The complaint in that case "allege[d] ongoing misconduct by the Defendants," including allegations of current misconduct. *Id.* The court thus concluded that the arbitration clause was not being applied retroactively. Moreover, even if application was retroactive, the court noted that "the Second Circuit has expressly rejected the argument that securities industry arbitration agreements cannot be applied retroactively." *Id.* This case does not involve a securities industry arbitration agreement, and is not controlled by the law of New York or the Second Circuit. Moreover, I have already decided that the complaint does not allege ongoing misconduct. Therefore, the reasoning of *Marcus* is inapplicable.

        b.     The terms of the 2006 SEA does not justify retroactive application

Defendant further argues that even if the claims are construed to stem from the

discrete illness in 2004 and prior to the execution of the 2006 SEA, as I have done, the broad language of the 2006 arbitration clause justifies retroactive application. However, a review of the terms of the 2006 SEA does not support retroactive application in this case. The 2006 SEA does not contain any language that renders its terms retroactively applicable. To the contrary, the 2006 SEA explicitly provides that the agreement is "*effective upon the Seafarer's reporting to work* on an assigned vessel in navigation" and that "the employment relations between [the parties] shall be governed by the terms of this Agreement *commencing on the date the Seafarer first signs onboard* the assigned vessel *after signing this Agreement...", (see* 2006 SEA, DE 1) (emphasis added). Therefore, the relationship between the parties in 2004 is not governed by the terms of the 2006 SEA.

Additionally, the language of the arbitration clause states that "[a]ny and all disputes arising out of or in connection *with this Agreement*, including any question regarding its existence, validity, or termination, or *Seafarer's service on the vessel*, shall be referred to and finally resolved by arbitration..." (*Id.*) (emphasis added). As explained above, the agreement became effective sometime in November 2006. Therefore, claims arising prior to its effective date do not arise "out of or in connection" with "*this* Agreement." Likewise, the claims in the complaint arose out of employment on the Celebration, yet the agreement covers Azevedo's service on the Elation.

Finally, while Defendant relies on decisions of other circuits in which the courts held that broad arbitration clauses could be applied to disputes that arose prior to the arbitration

14

contract, the Eleventh Circuit has held otherwise.[5] In *Klay v. Pacificare Health System,*

*Inc.*, 389 F.3d 1191, 1201 (11th Cir. Fla. 2004), the court explained:

> Because arbitration can only be compelled when the subject of the dispute
> has been agreed to be settled by arbitration, having one contract which
> contains a broad arbitration agreement does not necessarily mean that
> arbitration can be compelled when the subject of the dispute arises from a
> separate contract which does not have an arbitration clause. (Citing
> *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1352
> (11th Cir. 1982) (refusing to compel arbitration based on broad arbitration
> clause found in a license contract between the parties when the underlying
> claim was for breach of a separate lease contract which did not contain an
> arbitration clause). While we acknowledge that any doubts concerning the
> scope of arbitrable issues should be resolved in favor of arbitration, no doubt
> has been cast .... Because arbitration is strictly a matter of contract, we
> cannot compel arbitration for disputes which arose during time periods in
> which no effective contract requiring arbitration was governing the parties.
> *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v.
> MedPartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002) (per curiam) ("We
> will compel no arbitration of issues that are outside an agreement to
> arbitrate.").

*Id.* 1201-1203. As in *Klay*, while Plaintiff has clearly agreed to arbitrate claims that arise out

of her employment on the Elation, there is no doubt that Plaintiff did not agree to arbitrate

claims that arose out of her employment on the Celebration.

For these reasons, I conclude that the arbitration clause of the 2006 SEA cannot be

retroactively applied to claims that arose in 2004. Moreover, since there is no written

agreement to arbitrate the 2004 claims, the first jurisdictional requirement of *Bautista* has

not been established, and remand is appropriate. Having so decided, the question of

---

5

I further note that the language of the arbitration agreements in the cases Defendant relies
on was broader than the one at issue here, as it often included in the scope of the
agreement any disputes arising out of the employment relationship whereas here, as
discussed above, the clause covered disputes arising out of "this agreement" and for
"service on the vessel."

waiver by litigation conduct need not be considered.

B.     Attorney's Fees and Costs

Plaintiff requests an award of attorney's fees and costs for the improper removal of this matter pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  Defendant did not respond to Plaintiff's request.

The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132,141 (2005); *Lost Mt. Homeowners Ass'n v. Rice*, 248 Fed. Appx. 114, 115 (11th Cir. 2007) (same). The Eleventh Circuit has explained that the reasonable standard is "the result of balancing the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Rice*, 248 Fed. Appx. at 115 (quoting *Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1329 (11th Cir. 2006)).  Given the various decisions in which courts applied agreements to arbitrate retroactively, while factually distinguishable and inapplicable to this case, I cannot conclude that Defendant lacked an objective reasonable basis for seeking removal.  As a result, although I have determined that removal was improper, I deny Plaintiff's request for costs and attorney's fees.

III.     Conclusion

For the reasons discussed above, it is hereby ORDERED AND ADJUDGED:

16

1.   Defendant's Motion to Compel Arbitration [DE 3] is DENIED.

2.   Plaintiff's Motion to Remand and Request for Attorney's Fees and Costs [DE

7] is GRANTED IN PART as follows:

a.   the Motion to Remand is GRANTED;

b    the request for attorney's fees and costs is DENIED.

3.   The Clerk of the Court shall remand this case to the Clerk of the Circuit Court

of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

4.   All other pending motions are DENIED AS MOOT.

5.   All hearings, including oral argument on the subject motions, previously

scheduled for June 6, 2008 at 9:00 a.m., are CANCELLED.

6.   The Clerk of Court is instructed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami, Florida this __30__ day of May, 2008.


_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris M. McAliley
All Counsel of Record

17